[Civ. No. 13759. Second Dist., Div. Three. Aug. 20, 1942.]

ARTHUR HUTCHASON, as Administrator, etc., Respondent, v. BEN W. MARKS et al., Defendants; ROLAND CUMMINGS, Appellant.

Joseph Musgrove for Appellant.

Clarke & Bowker and Bailey & Poe for Respondent.

SCHAUER, P. J.—Respondent plaintiff has moved to dismiss this appeal on the ground that the order attempted to be appealed from is not an appealable order. The notice of appeal recites that it is taken "from the order . . . granting plaintiff's motion for a new trial as against defendant Roland Cummings." Plaintiff contends that the action is equitable in character, that in it trial by jury was not a matter of right, and hence that the order granting a new trial is not in the category made appealable by statute.

Section 963 of the Code of Civil Procedure is the statute in question. It provides that "An appeal may be taken from a superior court in the following cases . . . 2. From an order granting a new trial . . . in an action or proceeding where a trial by jury is a matter of right. . . ." Section 936 of the Code of Civil Procedure declares that "A judgment or order, in a civil action, except when expressly made final by this code, may be reviewed as prescribed in this title, and not otherwise, except as otherwise expressly provided." It is not contended that the order attacked is appealable unless it comes within the purview of subdivision 2 of section 963 of the Code of Civil Procedure, above quoted. Determination of this motion depends on the answer to the question: Does it affirmatively appear that there is no issue as to which trial by jury is a matter of right? Upon examination we find that the record requires a negative answer.

The complaint is labeled "FIRST AMENDED COMPLAINT FOR CANCELLATION OF INSTRUMENTS AND FOR EQUITABLE RELIEF." But neither the caption of the pleading nor the prayer is conclusive (*Standard Brands of California* v. *Bryce*, (1934) 1 Cal. (2d) 718, 721 [37 P. (2d) 446]); we must look to the whole of the pleadings and to all the facts of the case (see *Bettencourt* v. *Bank of Italy Etc. Assn.*, (1932) 216 Cal. 174, 179 [13 P. (2d) 659]). In the complaint before us plaintiff alleges that the defendants, by

means of false and fraudulent representations, and without valuable consideration, induced plaintiff to convey to them a certain promissory note for the principal sum of $25,000, secured by a mortgage on real estate in the city of Los Angeles; that the defendant Prouse, over a period of several months, by means of false and fraudulent representations, and without substantial consideration, procured the plaintiff to convey a parcel of real estate and to advance or become obligated for and pay various sums of money. The complaint further alleges that subsequent to all of the previously mentioned transactions defendants "with intent to further deceive and defraud plaintiff . . . falsely represented . . . that they would settle for all advances made by her" and by means of further false and fraudulent representations induced plaintiff to deliver to defendants certain personal property and to execute an agreement, dated January 5, 1937, in the form of a letter addressed to plaintiff, providing in part that "The undersigned hereby agrees that in full consideration for all financial assistance given by you to the undersigned and/or associates, either in cash or in real or personal property . . . and as full repayment to you of all advances by you to F. C. Prouse personally . . . the undersigned will deliver to you Temporary Stock Receipts, calling for the delivery to you of four thousand (4,000) shares, of a par value of five ($5.00) dollars per share, of privately owned stock of the American-Asiatic Life Insurance Company . . . and it is further agreed that the certificates for said stock are to be delivered to you or your nominee as and when said company is qualified to transact an insurance business.

"It is hereby further agreed that if said company is not so qualified within the time limit set forth in said receipts, or within such further extension of time as may be granted . . . all funds advanced by you, together with interest . . . shall be repaid to you by the undersigned within sixty (60) days from and after the expiration of said time. . . ." Such letter purports to be signed "Morley Trust By B. W. Marks" and "B. W. Marks," personally. Endorsed thereon is the following: "The above agreement, and all terms and conditions therein set forth, are hereby approved and agreed to by the undersigned. [Signed] Virginia Hutchason."

The complaint also alleges that "Plaintiff hereby offers to return to defendants the said agreement of January 5, 1937 and any and all other property delivered to her by defendants" and

"that in all of the transactions . . . defendants . . . acted in connivance with each other and in pursuance of a common purpose and scheme, and that each and all of said defendants had knowledge of the fraud practiced on plaintiff as hereinabove alleged, and acquiesced therein." A second count in the complaint reiterates all the averments of the first count and in addition alleges that the defendants entered into a conspiracy to obtain plaintiff's property "and use the same in furtherance of a plan to finance their business operations for personal profit" and that the plan "was carried out by defendants in all of the aforesaid acts as hereinabove alleged. . . . " The prayer of the complaint is "WHEREFORE, plaintiff prays judgment against defendants as follows:

"1. That said assignment of note and mortgage be ordered cancelled and delivered up; that in the event said note and mortgage have been disposed of, plaintiff have judgment against the defendants for the value thereof as follows: $24,500 with interest thereon at seven per cent per annum from January 5, 1935, to and including date of entry of judgment herein;

"2. $2,458.00 with interest thereon at the rate of seven per cent per annum from June 5, 1935, to and including date of entry of judgment herein;

"3. $1,500.00 with interest thereon at the rate of seven per cent per annum from August 28, 1935, to and including date of entry of judgment herein;

"4. $2,500.00 with interest thereon at the rate of seven per cent per annum from December 1, 1935, to and including date of entry of Judgment herein;

"5. $3,000.00 with interest thereon at the rate of seven per cent per annum from March 31, 1936, to and including date of entry of judgment herein;

"6. For costs of suit; and

"7. For all equitable relief."

 Up to this point in our consideration of the facts it appears that the action is primarily, if not exclusively, equitable in character. It seeks and depends on rescission of the agreement of January 5, 1937, as a step preliminary to any monetary recovery based on the several transactions specifically pleaded and as to one of those transactions—the alleged fraudulently induced conveyance of the $25,000 note and mortgage—the complaint primarily seeks recovery, on the theory of a rescission, of the specific property. As an

alternative to recovery of the specific property, ''in the event said note and mortgage have been disposed of,'' plaintiff asks judgment for their value. This alternative demand is not predicated on an alternative and legal cause of action, but is simply for alternative relief based on the equitable theory of rescission and presents a case which appears to be similar to that which is clearly and concisely delineated and disposed of by Mr. Presiding Justice Peters, speaking for Division One of the First District Court of Appeal in *Crouser* v. *Boice,* (1942) 51 Cal. App. (2d) 198 [124 P. (2d) 358].

But in our case there is an additional averment in the complaint as follows: ''Plaintiff alleges that as a result of the fraud and deceit of defendants, and the advantage taken of her by said defendants, as herein set out, plaintiff has been damaged and defrauded of her property in the sum of $33,-958.00.'' This averment is alleged in Count I and is incorporated in Count II by reference. Furthermore Count II alleges that the asserted conspiracy ''was carried out by the defendants . . . to the damage of plaintiff in the sum of $33,958.00.'' Such averments suggest that plaintiff in drafting her complaint was endeavoring, first, *in equity,* to avoid the effect of the contract of January 5, 1937, and, second, to state a cause of action *at law* for damages, based on the right declared in section 1709 of the Civil Code, ''One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.'' In such an action trial by jury of the issues of fact as to fraud and damage is a matter of right.

We recognize that ''An action for damages is based on an affirmance of the contract; an action for rescission on a disaffirmance thereof. [Citations] The two remedies are mutually inconsistent, although damages may be prayed for in the event rescission cannot be had.'' (*Davis* v. *Rite-Lite Sales Co.,* (1937) 8 Cal. (2d) 675, 678 [67 P. (2d) 1039].)

As to the item concerning the $25,000 note and mortgage we may assume that plaintiff's theory is purely that of rescission and that damages are sought only in the alternative that the specific property cannot be recovered. (Whether, on such a state of the pleading, upon a showing at the outset of the trial that the specific property was not recoverable, and that plaintiff would seek only the recovery of damages, a jury could be demanded as a matter of right to try the issues as to fraud

and damage, we need not determine.) The $25,000 note and mortgage transaction was only one of several pleaded in both counts. ▇ Another transaction pleaded in each count was one in which plaintiff was allegedly induced by defendants' fraudulent representations to endorse a promissory note and hypothecate property in favor of a person (corporation) not a party to this action. The note was defaulted, plaintiff's hypothecated property was sold, and she was damaged thereby in the sum of $3,000, according to averments in her complaint. Her theory of action, insofar as her cause of action is predicated on this item, is obviously an action at law for damages against each person connected with the fraud (see *Swasey* v. *de L'Etanche,* (1936) 17 Cal. App. (2d) 713, 718 [62 P. (2d) 753]). As to the issues of fact arising out of that item, a trial by jury would be a matter of right. It has been said to be the law that ''There is no right to a trial by jury where the gist of the action as thus determined [by examination of the pleadings and all the facts of the case] is for the enforcement of some right cognizable only in equity, even though legal relief results as an incidental part of the recovery. The fact, therefore, that the prayer contains a demand for damages is not controlling, for where the cause of action is essentially equitable, the prayer for damages is merely incidental to the relief sought, and if the action is properly brought in a court of equity, that court will determine all the issues in the case.'' (*Bettencourt* v. *Bank of Italy Etc. Assn., supra,* (1932) 216 Cal. 174, 179 [13 P. (2d) 659].) But in the later case of *Pacific Western Oil Co.* v. *Bern Oil Co.,* (1939) 13 Cal. (2d) 60 [87 P. (2d) 1045], at page 69, the Supreme Court after reviewing the cases of *Hughes* v. *Dunlap,* (1891) 91 Cal. 385 [27 Pac. 642] ; *Farrell* v. *City of Ontario,* (1919) 39 Cal. App. 351 [178 Pac. 740] ; and *Franklin* v. *Southern Pacific Co.,* (1919) 40 Cal. App. 31 [180 Pac. 76], concerning the right to a jury trial on the issue of damages in an action for an injunction to restrain future trespassing and to recover damages for previous trespasses, said ''Neither has there been any decision of this court or of the District Court of Appeal to which our attention has been called holding that a party to an action like the instant one is not entitled as a matter of right to a jury when the question of damages is put in issue by the pleadings until the decision of this court in the case of *Bettencourt* v. *Bank of Italy etc. Assn.,* 216 Cal. 174 [13 P. (2d)

659]. . . . In so far as the case of *Bettencourt* v. *Bank of Italy etc. Assn., supra,* is contrary to the rule thus announced, it is overruled." Likewise in *Connell* v. *Bowes,* (1942) 19 Cal. (2d) 870 [122 P. (2d) 456], at page 871, the Supreme Court speaking through Mr. Chief Justice Gibson says, "It is now established in this state, however, that if a complaint states two complete rights of action, one legal and one equitable, a jury trial may be obtained upon the issues raised by the legal cause. . . . Also, in *Farnsworth* v. *Hunter,* 11 Cal. (2d) 27, 31, 32 [77 P. (2d) 840], this court said that upon amendment of an equitable action so as to include a cause for damages the right to a jury trial on the latter issue could then have been asserted." In the case from which the foregoing quotation is taken it was held that the parties became entitled to a jury trial on the legal issues of fact raised by a cross-complaint even though the complaint stated a cause cognizable only in equity. In *Crouser* v. *Boice, supra,* (1942) 51 Cal. App. (2d) 198, 200 [124 P. (2d) 358], the rule is stated "Under our system of code pleading it is permissible to join legal and equitable issues in the same complaint. . . . Where legal and equitable remedies are sought in the same action, each remedy is governed by the law that would apply to it if the other remedy had not been requested. Thus, even though the action is essentially equitable, if the plaintiff requests legal relief, the parties are entitled to a jury trial on the legal issue."

Upon the same principles as those enunciated in the Farrell case, *supra,* (39 Cal. App. 351 [178 Pac. 740]) and followed in other cases hereinabove discussed, we are impelled to the conclusion that plaintiff's complaint contemplates the trial of legal as well as equitable issues and that upon the record before us we cannot hold that trial by jury of certain of the issues was not a matter of right.

The motion to dismiss the appeal is denied.

Wood (Parker), J., and Bishop, J. pro tem., concurred.